Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Michael J. Manning, Esq. (SBN 286879)
**MANNING LAW, APC**
26100 Towne Centre Drive
Foothill Ranch, CA 92610
Office: (949) 200-8755
Email: privacy@manninglawoffice.com

Attorneys for Plaintiff: HARVEY ST. MARY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY ST. MARY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BRINKER INTERNATIONAL, INC., a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF CAL. PENAL CODE § 638.51** |

1

COMPLAINT

## CIPA

1. The California Invasion of Privacy Act ("CIPA" or the "Act") is a decades-old criminal statute enacted to prevent eavesdropping on telephone calls that the Ninth Circuit and California district courts have more recently, *repeatedly,* applied to internet communications in all manner of contexts. *See*, *e.g.*, *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."); *Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2024 WL 3875785, at *7 (N.D. Cal. Aug. 16, 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under [CIPA] Section 632.").

2. This follows "the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy, and the California courts' approach to updating obsolete statutes in light of emerging technologies." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013); *see also Yockey*, 2024 WL 3875785, at *7 ("[T]he Legislature itself evinced a desire that the CIPA's statutory protections should extend across the developing field of technology.").

3. Under CIPA a "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id*. § 638.50(c).

4. The only three federal courts to decide the issue of whether third party online trackers are "trap and trace devices" or "pen registers" have all been decided the same way, affirmatively. Shah v. Fandom, Inc., --- F. Supp. 3d ---, 2024 WL 4539577, at *3-4 (N.D. Cal. Oct. 21, 2024); Moody v. C2 Educational Systems Inc., --- F. Supp. 3d ---, 2024 WL 3561367, at *2-3 (C.D. Cal. July 25, 2024); Greenley v.

Kochava, Inc., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).  Defendant's use of its online trackers as "trap and trace devices" without consent or a court order is the subject of this Complaint.

## JURISDICTION

5. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class.  Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

6. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant has purposefully directed its activities to the Central District of California by regularly engaging with individuals in California through its website.  Defendant's illegal conduct is directed at and harms California residents, including Plaintiff, and if not for Defendant's contact with the forum, Plaintiff would not have suffered harm.

7. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

8. Plaintiff HARVEY ST. MARY ("Plaintiff") is a citizen of California residing within the Central District of California.  Plaintiff was in California when he visited the Website.

9. Defendant BRINKER INTERNATIONAL, INC. ("Chili's" or "Defendant") is a Delaware corporation that owns, operates and/or controls

www.chilis.com (the "Website"), an online platform that offers goods and services for sale to consumers.

10. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true and names and capacities of the Defendants sued herein as Doe Defendants 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Doe Defendants when such identifies become known.

11. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## FACTUAL ALLEGATIONS

12. Chili's is the proprietor of the Website, an online platform that offers goods and services for sale to the general public. Defendant is a company headquartered in Texas.

13. Chili's encourages users to engage in foot traffic to the Website through various digital campaigns. Chili's is known for recruiting new members from the general public by leveraging is latest data technologies to give its marketing efforts a more human touch.

14. When a new visitor enters the Website, as the Website populates, the software implemented on the Website is already at work tracking the visitors' information and activities. The visitor is able to scroll through the Website and access multiple pages on the Website by clicking the various buttons and icons

provided.

15. There is no requirement for a visitor to review or consent to the Website's privacy policy or terms and conditions nor to agree to Website terms before using the Website.

16. Defendant failed and continues to fail to obtain Plaintiff's and Class Members' prior consent to its tracking/surveillance activities. There is no requirement that a user interacts with a consent mechanism, no restriction on the user's ability to access the Website when the user does not "consent," and no reduction of the Defendant's use of fingerprinting as described herein.

17. The TikTok Software gathers device and browser information, geographic information, referral tracking, and URL tracking by running code or "scripts" on the Website to send user details to TikTok. The TikTok Software begins to collect information the moment a user lands on the Website and immediately starts sending information to TikTok regarding the user's visit.

18. According to a leading data security firm, the TikTok tracking pixel secretly installed on Defendant's website is particularly invasive. The pixel "immediately links to data harvesting platforms that pick off usernames and passwords, credit card and banking information and details about users' personal health." The pixel also collects "names, passwords and authentication codes" and "transfer the data to locations around the globe, including China and Russia", and does so "before users have a chance to accept cookies or otherwise grant consent." See Aaron Katersky, TikTok Has Your Data Even If You've Never Used The App: Report, ABC News (last accessed October 2024), https://abcnews.go.com/Business/tiktok-data-app-report/story?id=97913249.

19. Because Defendant has implemented TikTok's "Auto Advanced Matching" technology, the TikTok Software scans every website for information, such as name, phone number and address, and simultaneously sends the information to TikTok in order to isolate with certainty the individual to be targeted.

20. The TikTok Software runs on virtually every page of Defendant's Website, sending to TikTok information regarding the Website user's interest in Defendant's products. An image of the code as it appears side by side with and simultaneous to the TikTok Software's Auto Advanced Matching tracking code can be seen in the following screenshot:



////

////

21. The Website instantly sends communications to TikTok when a user lands on the Website and when a user clicks on links to various pages contained within the Website. In the example below, the right side of the image shows the various TikTok scripts being run by Defendant and the electronic impulses being sent to TikTok to add to their collection of user behavior:



22. By sharing plaintiff's and class members' personal and de-anonymized data with TikTok, Defendant effectively "doxed" them to America's most formidable geopolitical adversary. See https://www.cnn.com/2023/06/08/tech/tiktok-data-china/index.html. Analysis: There is now some public evidence that China viewed TikTok data (quoting sworn testimony from former employee But Yu that Chinese Communist Party officials "used a so-called 'god credential' to bypass any privacy protections to spy on civil rights activists' 'unique user data, locations, and communications.'") (last accessed October 2024).

23. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing,

routing, addressing, and signaling information generated by users, who are never informed that the website is collaborating with the Chinese government to obtain their identifying information.

24. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective. Defendant did not obtain Plaintiff or the Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting, de-anonymization or tracking of consumer information.

25. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website.

26. CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without consent or a court order. California Penal Code § 637.2; see also, *Moody v. C2 Educational Systems Inc*., No. 2:24-cv-04249-RGK-SK, 2024 U.S. Dist. LEXIS 132614 (C.D. Cal. July 25, 2024).

27. Defendant never obtained a court order permitting the installation of trap and trace software and did not obtain Plaintiff or the Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting, de-anonymization or tracking of consumer information.

## CLASS ALLEGATIONS

28. Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

**All persons within California whose identifying information was sent to TikTok within the statute of limitations period.**

29. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact

identifies of Class Members can be ascertained by the records maintained by Defendant.

30. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

   a. Whether Defendant installed the TikTok Software on the Website;
   b. Whether the TikTok Software is a trap and trace process as defined by law;
   c. Whether Plaintiff and Class Members are entitled to statutory penalties;
   d. Whether Class Members are entitled to injunctive relief;
   e. Whether Class Members are entitled to disgorgement of data unlawfully obtained; and
   f. Whether Class Members are entitled to injunctive relief.

31. TYPICALITY: As a person who visited Defendant's Website and whose electronic communication was recorded, intercepted and eavesdropped upon, Plaintiff is asserting claims that are typical of the Class Members.

32. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

33. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual

litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

## FIRST CAUSE OF ACTION

### Violations of Cal. Penal Code § 638.51

### *By Plaintiff Against All Defendants*

34. Plaintiff reasserts and incorporates by reference the allegations set forth in each preceding paragraph as though fully set forth herein.

35. California Penal Code §638.51 (the "California Trap and Trace Law") provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a).

36. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication."   California Penal Code § 638.50(c).

37. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is designed precisely to identify the source of the incoming electronic and wire communications to the Website. Defendant did not obtain consent from Plaintiff or any of the class members before using trap and trace technology to identify users of its Website and has violated Penal Code § 638.51.

38. CIPA imposes civil liability and statutory penalties for violations of§638.51. California Penal Code § 637.2; see also, *Moody v. C2 Educational Systems, Inc.*, No. 2:24-cv-04249-RGK-SK, 2024 U.S. Dist. LEXIS 132614 (C.D. Cal. July 25, 2024).

////

////

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;
2. An order declaring that Defendant's conduct violates CIPA;
3. An order of judgment in favor of Plaintiff and the Class against Defendant on the cause of action asserted herein;
4. An order enjoining Defendant's conduct as alleged herein;
5. Statutory penalties;
6. Prejudgment interest;
7. Reasonable attorney's fees and costs; and
8. All other relief that would be just and proper as a matter of law or equity.

Dated:  March 17, 2025          **MANNING LAW, APC**

By:  /s/ Michael J. Manning, Esq.
     Michael J. Manning, Esq.
     Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  March 17, 2025          **MANNING LAW, APC**

By:  /s/ Michael J. Manning, Esq.
     Michael J. Manning, Esq.
     Attorney for Plaintiff